UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GREGORY LEE CHEST                                                            PLAINTIFF

v.                                              CIVIL ACTION NO. 3:07-CV-466-S

LOUISVILLE METRO GOVERNMENT et al.                     DEFENDANTS

**MEMORANDUM OPINION**

       The plaintiff, Gregory Lee Chest, filed a *pro se*, *in forma pauperis* complaint alleging violations of his civil rights, as well as claims arising under state law (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the Court will dismiss this action.

**I. SUMMARY OF CLAIMS**

       The plaintiff sues the Louisville Metro Government, Mayor Jerry Abramson, and Louisville Metro Department of Corrections Director Tom Campbell in their official capacities. His complaint revolves around the hiring and employment of what he contends were untrained female employees at the Louisville Metro Department of Corrections while he was incarcerated there. According to the complaint and the brief attached thereto, these female employees, by virtue of their lack of training, violated his constitutional rights and caused him emotional distress because they were unable to counsel him in his requests for administrative information and legal material. He alleges that the defendants negligently failed to develop a policy or program to initiate a regulation that would have prevented his Thirteenth and Fourteenth Amendment rights from being violated. Specifically, he alleges that despite Title IX and

Sections 703 and 704 of the "discrimination employment law,"[1] which were binding on the defendants, Abramson allowed Campbell to hire untrained employees. He further alleges that there was a policy which was the moving force causing the plaintiff's constitutional rights to be violated in that certain employees, "untrained female counselors," did not know their job requirements when aiding inmates. He further alleges that he was harmed by the untrained female counselor employees during a prior § 1983 action, which lasted from 2004 through 2006, and that their actions have caused him distress and anxiety.

His complaint details specific incidents involving certain female Louisville Metro employees from May 2004 to November 2006. The specific incidents about which he complains include the failure to address grievances; not receiving requested writing supplies; being unable to obtain the required signature from the financial officer; not receiving legal books he had requested; and not being able to get information about mail service because the mail "rounds" were being conducted by female employees who were not trained to work in the mail room. He details a couple of occasions on which he was told by other Louisville Metro staff that the female employees about whom he complained had not been trained as to their job requirements. He includes copies of grievances he filed about the lack of training of certain employees. He also states that a certain employee was pressuring him into "servitude" by refusing to give him the writing supplies he requested. As relief, he asks for monetary and punitive damages and attorney fees for studying, presumably law, over three years.[2]

---

[1] The Court interprets this to be a reference to Title VII and IX of the Civil Rights Act of 1964.

[2] He checks that he wants injunctive relief on the complaint form, but does not specify what type of injunctive relief he is seeking. In any event, he is no longer incarcerated, so any

2

Attached to the complaint is a "brief" in which the plaintiff states that in May 2004, Abramson hired George Ditella as Director of the Department of Corrections after a report described lax management at the jail. The plaintiff asserts that due to overcrowding at the jail inmates began, among other things, threatening jail employees and that employees began grieving forced overtime and worktime through their union. However, according to the plaintiff, the mayor told the employees that there was not enough money in the budget for a pay increase. The plaintiff suggests that the female employees are not protected by whistle blower policies and cannot go public with their unhappiness regarding work-related issues. He also says that as the jail conditions worsened between April and December 2004, jail employees vocalized their disapproval of the fighting between corrections officers and inmates, and it was during this time that the plaintiff was litigating his prior § 1983 action for the use of excessive force by a corrections officer, Roy Pridgen, which was dismissed. He alleges that it was the constitutional violations by the female jail counselors that caused him injury in the form of the dismissal of his prior excessive force action.

## II. ANALYSIS

This Court must review the instant action. *See* 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d at 604-05. Upon review, this Court must dismiss a case at any time if the Court determines that the action is "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis

---

request for injunctive relief would be moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974 (2007).

### *Thirteenth Amendment*

The Thirteenth Amendment prohibits involuntary servitude, except as punishment for a crime whereof a party has been duly convicted. U.S. CONST. amend. XIII.; *United States v. Kozminski*, 487 U.S. 931, 943 (1988). The intent of the Thirteenth Amendment is to "prohibit compulsion through physical coercion." *Kozminski*, 487 U.S. at 942. A condition of involuntary servitude exists when the victim has no available alternative but to work or to be subject to legal sanction or physical harm. *Id.* at 943. However, not every situation involving a choice between labor or legal sanction will constitute involuntary servitude. *Steirer by Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 999 (3d Cir. 1993), *abrogated on other grounds*, *Troster v. Penn. Dep't*

4

*of Corrs.*, 65 F.3d 1086, 1087, 1090 (3d Cir. 1995). "Modern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement." *Id.*

The only allegations the plaintiff makes concerning the Thirteenth Amendment are that after he asked a counselor for paper, pencils, envelopes, and an action request form, he gave Counselor Marcie Beards a letter addressing inmates' difficulties in receiving writing supplies. He then heard Counselor Beards state to another employee, "'I know what I'm gonna do about all this s**t going on in this jail. We need somebody to come here to this jail to see all this. I'm gonna make Chest work for his. That's how I'll get my money." The plaintiff states that the next day Counselor Beards gave writing supplies to other inmates but not to him, telling him that it was up to the commissary to give inmates pencils and papers. However, the plaintiff surmises that the reason she gave the other inmates but not him supplies was because she had decided to make him "work" for his supplies, apparently by pressuring him to write grievances and file a § 1983 action.

The plaintiff's allegation that because Counselor Beards had been overheard to say that she wanted to make the plaintiff "'work'" for his writing supplies is not enough to show that he was forced into indentured servitude. Even assuming that filing grievances or lawsuits is the type of labor that would fall under the Thirteenth Amendment, the plaintiff's supposition that the reason he did not receive writing supplies was as stated in Counselor Beards' overheard comment is purely conclusory. The Court is not required to accept conclusory and unsupported statements. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Consequently, the plaintiff's claims under the Thirteenth Amendment will be dismissed for failure to state a claim upon which relief may be granted. *See id.* at 511-12.

*Fourteenth Amendment*

The plaintiff sues each of the defendants in their official capacities. If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, the plaintiff's claims against the individual defendants in their official capacities are actually brought against the Louisville Metro government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In the instant case, the plaintiff has alleged the existence of a governmental policy or custom relative to the nature of his complaints and claims. The question, therefore, is whether

the plaintiff was harmed by a constitutional violation. Although the plaintiff asserts that his Fourteenth Amendment rights to due process and equal protection were violated by the female employees' lack of training, he alleges no facts showing a violation of the Due Process or Equal Protection Clause. Reading the complaint liberally, as this Court must, the Court construes the plaintiff's complaint as attempting to state a violation of his First Amendment rights of access to the courts and to file a grievance.

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275-80 (1985). Thus, in Kentucky, § 1983 actions are limited by the one-year statute of limitations found in KY. REV. STAT. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 183. Though the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint. *Fields v. Campbell*, No. 01-6458, 2002 WL 1359388, at *2 (6th Cir. June 20, 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)). With respect to the First Amendment claims, all but three instances occurred over a year prior to the filing of the instant action. Those claims are, therefore, time-barred and must be dismissed. As to the three instances which are not time-barred, the Court will consider the substance of those claims.

A prisoner has a constitutionally protected right of access to the courts. *Bounds v. Smith,* 430 U.S. 817 (1977). This right is denied if prison officials deprive him of a "reasonably

adequate opportunity" to challenge his sentence or the conditions of his confinement. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Deprivation of this right "in some theoretical sense" will not establish a violation of the right to access the courts. *Lewis v. Casey*, 518 U.S. at 351. Rather, the plaintiff must show "actual prejudice to non-frivolous claims." *Hadix v. Johnson*, 182 F.3d 400, 406 (6th Cir. 1999). In order to state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. at 351 ("[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.").

The first two of the described incidents that took place within one-year of the filing of the complaint are that on October 10, 2006, a new female counselor named Shipley forgot to give him ten sheets of writing paper he had requested and on October 20, 2006, she was doing the "mail run" and could not answer his questions about certifying mail. He does not allege that not receiving the writing paper that day prevented him from accessing the courts or filing a grievance or that Shipley's inability to answer his questions about certifying mail interfered with his ability to access the courts.

He also alleges that on November 9, 2006, he told Shipley that he needed a notice of appeal form to file an appeal in the U.S. District Court. He states that the reason he asked her was that on November 7, 2006, he had gone to a mental evaluation court hearing and Judge Denise Clayton had ruled that he was incompetent to go to trial and he wanted to appeal that decision. However, he does not allege that he told Shipley that this was the reason for requesting an appeal form. He states that on November 10, Shipley gave him a § 1983 action form and told

8

him that her supervisor told her that that was what he probably needed. According to the plaintiff, Shipley also stated that she would keep checking on "that appeal form" although she did not know what it looked like. He states that he sent his appeal to the Sixth Circuit but found out later he should have sent it to the Kentucky state appellate court. He does not allege that the appeal was sent to the wrong court based on Shipley's actions or inactions. In fact it appears from the complaint that the plaintiff requested an appeal form for U.S. District Court; he does not allege that he relied on Shipley in making the decision to send an appeal to the Sixth Circuit instead of state court. And, despite the fact that he alleges that Shipley did not give him an appeal form, he obviously did file an appeal, although in the wrong court.

Thus, the plaintiff has not stated a claim for a denial of access to the courts because he has not demonstrated actual prejudice to pending litigation challenging his conviction or conditions of confinement. *See Lewis v. Casey*, 518 U.S. at 351.

### *State law claim regarding negligence*

The plaintiff also alleges that the defendants were negligent in failing to develop a policy to prevent his constitutional rights from being violated. Because the plaintiff's federal law claims will be dismissed, the Court declines to exercise its supplemental jurisdiction over the plaintiff's state law claim regarding negligence. *See* 28 U.S.C. § 1367(c)(3). That claim will be dismissed without prejudice.


### III. <u>CONCLUSION</u>

The Court will enter a separate order dismissing all of the federal claims with prejudice and the state-law negligence claim without prejudice.

Date:

cc:   Plaintiff, *pro se*
      Defendants
      Jefferson County Attorney
4411.009